# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| HENRY M. YOUNGBLOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-204-WTL-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Henry Youngblood requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Youngblood's application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Mr. Youngblood filed for SSI on April 6, 2011, alleging he became disabled on March 29, 2011. Mr. Youngblood's application was denied initially on September 22, 2011, and again upon reconsideration on December 29, 2011. Following the denial upon reconsideration, Mr. Youngblood requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Blanca B. de la Torre on October 15, 2012. The ALJ issued her decision denying Mr. Youngblood's claim on November 29, 2012, and the Appeals Council denied his request for review on December 18, 2012. After the Appeals Council denied review of the ALJ's decision, Mr. Youngblood filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while "[s]he is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III. THE ALJ'S DECISION

The ALJ determined at step one that Mr. Youngblood had not engaged in substantial gainful activity since April 6, 2011, the application date. At steps two and three, the ALJ concluded that Mr. Youngblood had the severe impairments of "obesity; hypertension; residuals of myocardial infarction with atrial fibrillation; residuals of cerebral vascular accident; meralgia paresthetica of the right thigh; obstructive sleep apnea; cocaine and alcohol abuse, in remission since April 2011; and depression," R. at 12, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Mr. Youngblood had the residual functional capacity ("RFC") to perform light work with certain limitations. The ALJ noted that Mr. Youngblood had no past relevant work; however, at step five the ALJ determined that Mr. Youngblood could perform a range of work that exists in the national economy, including work as an apparel sorter, packaging line worker, and housekeeper. Accordingly, the ALJ concluded that Mr. Youngblood was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Mr. Youngblood's brief (Dkt. No. 17) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In his brief in support of his Complaint, Mr. Youngblood argues that the ALJ: 1) erred at Step Three in determining that he was not disabled due to his combined stroke-brain injury, anxiety, and major depression; 2) erred in failing to call a medical advisor to testify as to medical equivalency; 3) erred in her credibility determination; and 4) erred at Step Five in determining that he was capable of performing some jobs. His arguments are addressed below.

### A. Listings 12.02 and 12.04

Mr. Youngblood first argues that the ALJ erred in finding that he did not meet or medically equal Listing 12.02 or 12.04; he also argues that the ALJ should have called a medical advisor to testify as to medical equivalency. The Court disagrees.

Both Listing 12.02, organic mental disorders, and 12.04, affective disorders, require the satisfaction of paragraphs A and B or that the requirements in paragraph C are met.[1] The ALJ found that Mr. Youngblood did not meet or equal the requirements in paragraph B, which require at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, app. 1. A marked restriction means "more than moderate but less than

---

[1] Mr. Youngblood does not argue that he meets the requirements of paragraph C for either Listing 12.02 or 12.04.

4

extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

In her decision, the ALJ found that Mr. Youngblood had moderate restrictions of daily living, noting that Mr. Youngblood could make simple meals, used public transportation, and had appropriate grooming and hygiene; she did note, however, that he did not shop, was unable to pay his own bills, and did not clean his own laundry. R. at 14. The ALJ next found that Mr. Youngblood had moderate difficulties in maintaining social functioning, noting that Mr. Youngblood was cooperative and friendly, spent time with family members, and attended church on a regular basis; however, she noted that he did not have many friends and had difficulty trusting others. *Id*. The ALJ found that Mr. Youngblood also had moderate difficulties with concentration, persistence, and pace, noting that he demonstrated delayed calculations, had atypical attention and concentration, and that his memory was weak. Finally, the ALJ noted that Mr. Youngblood experienced no episodes of decomposition. *Id*. Accordingly, the ALJ found that Mr. Youngblood did not meet or equal the requirements of paragraph B for either Listing.

Turning now to Mr. Youngblood's arguments, he first argues that his Global Assessment of Functioning ("GAF") scores prove he satisfies the requirements of paragraph B, as they indicated that he "would not be able to sustain any employment and would thus be totally disabled." Pl.'s Br. at 12. Mr. Youngblood's GAF score after he suffered a heart attack and stroke in the spring of 2011 was 35 (R. at 457); however, at the end of 2011, his GAF score had improved to 41 (R. at 721), and by July 2012, his GAF score was 55 (R. at 714).[2] As this Court

---

[2] Mr. Youngblood was also assessed a GAF score of 65 in May 2011. *See* R. at 442.

has previously noted, GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)). The Court reads the ALJ's decision as considering Mr. Youngblood's ranging GAF scores—from a high of 55 to a low of 35—as one piece of evidence she considered when determining whether he met or medically equaled the requirements of paragraph B. In so doing, the ALJ did not err.

Next, Mr. Youngblood argues that "[t]he ALJ rejected the findings from Dr. McIntosh's psychological evaluation . . . Dr. McIntosh's findings would indicate he had Marked impairment in the 'B' criteria of Listing 12.02 and 12.04." Pl.'s Br. at 12. Dr. David McIntosh performed a Mental Status Examination of Mr. Youngblood on May 25, 2011. Among his findings were that Mr. Youngblood "could be expected to have moderate difficulty attending to a simple, repetitive task continuously for a two-hour period" and "could be expected to work at a pace that is slower than that of his same-aged peers." R. at 441-42. It is unclear to the Court why Mr. Youngblood believes these findings support "marked" restrictions in the paragraph B criteria; Dr. McIntosh specifically used the word "moderate" in his findings. Moreover, the ALJ gave this opinion "little weight" because it was "rendered shortly after the claimant's stroke." *Id*. at 22. In fact, Mr. Youngblood's treating physician, Dr. Mark Jones, noted in July 2012, that "Mr. Youngblood may have some impairment in focus/concentration and working with others, but regarding mental health, there are no specific restrictions noted at this time." *Id*. at 711. In all, the Court finds no error in the ALJ's treatment of Dr. McIntosh's evaluation, nor does the Court agree that this evaluation supports "marked" restrictions in the B criteria for Listings 12.02 or 12.04.

6

Finally, Mr. Youngblood argues that the ALJ erred in failing to obtain a medical advisor to testify whether his impairments medically equaled Listing 12.02 or 12.04. In failing to do so, Mr. Youngblood argues that the ALJ improperly relied on her own layperson's opinion regarding the issue of medical equivalence. The Commissioner argues that the ALJ was not required to obtain additional evidence because Mr. Youngblood's "treating psychologist opined that Plaintiff had no specific mental health limitations and two nonexamining psychologists opined that Plaintiff's mental impairments did not meet or medically equal a listed impairment, (Tr. 500, 566), and signed disability determination and transmittal forms indicating that Plaintiff was not disabled (Tr. 72-73)." Def.'s Response at 9. The Court agrees.

> Social Security Ruling ("SSR") 96-6p provides:
>
> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

The Seventh Circuit has noted that compliance with SSR 96-6p can be met with Disability Determination and Transmittal forms ("the Forms"), and that the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the Forms that address medical equivalency. *See Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989) (noting that the requirements were satisfied with regard to medical equivalency because two physicians signed the Forms and substantial evidence in the record supported the ALJ's determination that the claimant did not medically equal a listing); *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that consideration by a physician . . . designated by the Commissioner has

been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts.") (internal citations and quotation marks omitted). The Court finds, therefore, no error in the ALJ's failure to call a separate medical expert to testify at the hearing regarding medical equivalency.

### B. Credibility

Mr. Youngblood next argues that the ALJ's credibility determination was "patently erroneous" because she "did not make an express credibility determination." Pl.'s Br. at 17. Mr. Youngblood is correct that "nothing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied. Indeed, the cases make clear that the ALJ must *specify* the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). That said, however, the Court disagrees that the ALJ in this case did not specify the reasons she found Mr. Youngblood's testimony to be not credible.

The ALJ summarized Mr. Youngblood's testimony as follows:

> The claimant testified that he could only stand 3-5 minutes and could walk one and a half blocks. He alleged being unable to lift a gallon of milk on a continuous basis. The claimant stated that he had not abused substances since April 2011. He indicated that he had nerve damage in both of his legs that interfered with his sleep. The claimant described episodes of falling and reported needing a cane from time to time because of his knees occasionally giving out. He described mental symptoms such as trouble remembering things, problems concentrating, and trouble making decisions.

R. at 16. She then went on to note, "[w]e now evaluate the claimant's allegations in light of the totality of the evidence. While the record documents impairments of severity, particularly for discreet periods of time, it does not support the degree of persistent and disabling restrictions alleged in these proceedings." *Id.* at 17.

8

The Commissioner notes that the ALJ found Mr. Youngblood to not be credible due to his "inconsistent statements, lack of compliance with treatment recommendations, activities of daily living, improvement with treatment, and sporadic work history prior to his alleged onset date." Def.'s Resp. at 10. The Court concurs. The following statements, taken from the ALJ's credibility determination, are just a sample of the ALJ's reasons for discounting Mr. Youngblood's own statements:

- "An x-ray of the claimant's right knee was performed on October 11, 2010 due to complaints of knee pain; however, results were negative." R. at 17.

- "Upon discharge [from the hospital], it was noted that the claimant had been hospitalized multiple times over the previous 6 months due to drug-related issues and noncompliance, and would likely have a high readmission rate due to his poor compliance with physician recommendations." *Id*.

- "Daniel Palmer, M.D., performed a consultative examination . . . on July 12, 2011, which was essentially unremarkable. . . . He had no complaints of pain and denied musculoskeletal weakness. . . . He demonstrated a normal gait without assistive device, was able to squat, and could walk on heels and toes. . . . he had full range of motion[.]" *Id*. at 18.

- "Paul A. Deardorff performed a psychological consultative examination . . . on July 12, 2011. . . . He appeared to have some difficulties reading words, but receptive language skills were adequate. His intelligence was estimated in the low average range. . . . He portrayed no signs of psychotic symptoms, overt anxiety, or depression. . . . The claimant's scores were very poor in every area assessed; however, his motivation was not strong during testing." *Id*. at 19.

- "A speech/language cognitive evaluation was conducted at Reid Hospital on August 2, 2011 for the purpose of establishing speech therapy. Interestingly, the claimant reported that his quality of life and health status was very good. . . . The claimant demonstrated some signs of verbal and oral apraxia . . . Speech therapy on a weekly basis for 8 weeks was ordered, although it appears that the claimant did not follow through with all scheduled appointments." *Id*. at 19.

- "Although the claimant described some limitations in activities of daily living, his allegations are not indicative of disabling impairment." *Id*. at 21.

In all, the Court finds that the ALJ adequately explained why she did not find Mr. Youngblood's own statements to be fully credible.

In his Reply, Mr. Youngblood argues that the Commissioner's "attempt to create a credibility determination for the ALJ that complies with the Ruling is simply improper post hoc rationalization and must be rejected." Pl.'s Reply at 7. The Court disagrees. The Commissioner does not improperly advance assertions or evidence not articulated by the ALJ in her credibility determination. Rather, the Commissioner provided examples from the ALJ's decision of why the ALJ found Mr. Youngblood to not be credible. As such, Mr. Youngblood's contention that the Commissioner engaged in post hoc rationalization is unconvincing, and the Court finds no error with the ALJ's credibility determination.

### C. Step Five

Finally, Mr. Youngblood argues that the ALJ's RFC assessment fails to account for his mental impairments, specifically, his moderate impairments in activities of daily living, social functioning, and in concentration, persistence, and pace.[3] He argues that the ALJ impermissibly failed to account for these deficiencies in limiting him to "short, simple, repetitive tasks." *See* R. at 16 (Mr. Youngblood's RFC assessment provided that "[h]e is able to understand, remember, and carry out short, simple, repetitive instructions; can sustain attention and concentration for 2-hour periods at a time and 8 hours in the workday on short, simple, repetitive tasks; and can use judgment in making work-related decisions. He requires occupations with only occasional co-

---

[3] Mr. Youngblood notes that the ALJ found that he had moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace, citing to page fourteen of the Record. This page contains the ALJ's Step Three determination. It is true that the ALJ found that Mr. Youngblood had moderate difficulties in activities of daily living, social functioning, and concentration, persistence, and pace in evaluating whether he met the requirements of paragraph B at Step Three; this, however, is not an RFC assessment. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the ALJ noted this in her decision. *See* R. at 15.

worker contact and supervision; a set routine and procedures with few change[s] during workday; and no contact with the public"). The Court disagrees and finds that the RFC assessment and the hypothetical given to the Vocational Expert ("VE") fully account for Mr. Youngblood's mental limitations.

On August 1, 2011, Mr. Youngblood underwent a mental RFC assessment performed by Dr. Joseph A. Pressner. With regard to his understanding and memory, he was noted to be "Moderately Limited" in his "ability to understand and remember detailed instructions." R. at 496. With regard to his sustained concentration and persistence, he was noted to be "Moderately Limited" in his "ability to carry out detailed instructions," his "ability to maintain attention and concentration for extended periods," his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. at 496-97. With regard to his social interaction, he was noted to be "Not Significantly Limited" in all categories. *Id*. at 497. Based on these notations, Dr. Pressner opined that "[d]espite poor memory scores, the preponderance of the evidence suggests that the claimant is capable of unskilled work on a sustained basis." *Id*. at 498.

At the October 15, 2012, hearing, the ALJ's hypothetical given to the VE included the following limitations: "the individual is able to understand, remember, carry out short, simple, repetitive instructions; can sustain attention and concentration for two-hour periods at a time and for eight hours in the workday on short, simple, repetitive tasks; can use judgment in making work-related decisions commensurate in that type of work. The occupation should have a set routine and procedures with few changes during the workday, no contact with the public, and

11

only occasional coworker contact and supervision." *Id*. at 66. The VE then identified jobs that Mr. Youngblood could perform.

Thus, the hypothetical given to the VE and the RFC assessment accurately encompassed Mr. Youngblood's limitations. It is not analogous to the "unskilled work" limitation that the Seventh Circuit has cautioned does not fully address certain mental limitations. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (noting that limiting the plaintiff to "unskilled work" did not fully address her difficulties in "maintain[ing] regular work attendance, [carrying] out instructions, and [dealing] with the stresses of full-time employment"). Here, the ALJ went beyond limiting Mr. Youngblood to "short, simple, repetitive tasks" and imposed other restrictions, fully compatible with his mental RFC assessment. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). In all, the Court finds no reversible error with the ALJ's RFC assessment or the hypothetical given to the VE.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 2/17/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification